3467 from the Southern District of Iowa, United States v. Vernon Shumaker. Alright, Ms. Quick for the appellate. Good morning, may it please the court. Clear error is a difficult and high standard of appellate review, but it is not insurmountable. The district court here erred in accepting law enforcement's statement that they smelled Mr. Shumaker smoking marijuana in his car. When this testimony was contradicted by the extrinsic evidence at the scene, it was discredited by an olfactory expert, and it was already rejected under similar circumstances by a state district court. Mr. Shumaker's case presents the rare instance where the district court's decision must be reversed as clear error. Now, off the bat, there's an important distinction that I think should inform this court's analysis when reviewing this case, and that distinction is what the officers here testified to versus the actual finding that the district court made in this case, and it illustrates a major flaw in the district court's decision. The officers, Officer Steinkamp and Officer Minnehon, who testified most in-depth about the smell of what they determined was burning marijuana, both testified that the smell that they could detect from Mr. Shumaker's vehicle indicated that Mr. Shumaker was actively smoking marijuana. What they both were very forthcoming about is if he was not smoking marijuana, if it was truly just those buds that were in the car, that they couldn't have smelled that. On page 50 of the transcript, Officer Steinkamp was asked, Question, do you think that you could smell the contents of that ashtray without it burning while driving behind his vehicle? Answer, if he was driving and smoking, yes, I could smell that. Similarly, Officer Minnehon, on page 76 of the transcript, admitted when asked, Are you telling the court that you could smell these buds? He's saying, no, my testimony is that Mr. Shumaker was smoking marijuana while we were following him. The district court, in its findings, in crediting the officer's statement, doesn't find that Mr. Shumaker was actively smoking marijuana. Instead, the district court simply credits their statement that they smelt burning marijuana. But to do so, the district court needed to accept their statement that he was actively smoking marijuana. Because based on the officer's own admission, they couldn't have smelled just those buds that were covered by an ashtray. So why couldn't the district court have made that implicit conclusion based on the large, fresh one that was apparently in the ashtray that could have been put out? Are there some testimony that the cops said that in their experience, oftentimes when they know they're going to be stopped, the person being chased or followed will end up putting it out before being stopped? For several reasons, Your Honor. For one, the officers wouldn't even acknowledge that. The officers stated in the suppression transcript, or during the hearing, we wouldn't have been able to spell it if it were these old buds. Now, was there evidence that one of these buds was fresher, it had been recently put out? No, Your Honor. It's contradicted by the extrinsic evidence that was put before the court. This court can see on the video, and I believe it's government's exhibit four, the picture of these buds. These are old buds. There's no testimony. They all acknowledge there was no embers. They acknowledge there was no smoke coming off of these. They don't state that it was hot. As far as what the officers observed while they were driving, there was no testimony that there was smoke coming out of the vehicle. There's no testimony that there was smoke in the vehicle when they stopped it. There's no testimony that there was smoke coming out of the ashtray. And also, notably, not noted in the briefs, but this idea of if he was smoking and he put the bud out, and that's what they were smelling, they followed him for at least 30 seconds. And time and time again, we see in these cases, officers stating, well, I could see furtive movements. I could see him moving his arm. I could see him doing something in the driver's seat. There's absolutely no testimony of that. And that's crucial in this case, looking at the ashtray itself, because it's not just like a little cover. It's almost like a Russian tea doll type lid, where if he was, Mr. Shoemaker was going to be putting out a bud and then putting this ashtray in, you would think, and it's their burden, the government would have put on testimony that these officers did see that. They did not testify to that. It's not visible in any of the video. So it's not only that there's weak evidence that he was smoking, it's simply contradicted by the evidence, video, and expert in this case that he was smoking. Didn't Mr. Shoemaker, though, admit that his car smelled like marijuana? I think he said something like, I smoke strong weed or something like that. I mean, I didn't give that much weight, and I don't think this court should. It's kind of an after the fact justification, him just kind of, Mr. Shoemaker's demeanor during those conversations are just kind of like, yeah, yeah, I smoke strong weed. But when we're talking about even the expert testimony and how the officers reacted in that scene and at the scene, it doesn't support that they actually smelled marijuana. In this case, the officers, when they go up to the car and they're saying, oh, it smells like weed, it reeks of weed, and then they pull Mr. Shoemaker out of the car. And if this is an instance where the smell is coming from Mr. Shoemaker smoking weed, they pull him out of the car, he's out of the car. The officers are still in Mr. Shoemaker's car saying, wow, it really reeks of weed in here. What we don't hear from the government and we don't have any testimony to is, Mr. Shoemaker's back in my patrol car, he reeks of weed. He smells like weed. I pulled him out of the car. He must have been smoking. If that's their position and they have the burden to establish that, there should have been testimony of that. But that, to me, indicates that it was not coming from him. Ms. Quick, may I interrupt you for a moment? Yes. I'm not sure about what everyone else in the video has, but I've lost my video feed. I can hear everyone clearly, but I've lost my feed and so I lost track of your time. I'm going to ask the clerk to inform me of the time remaining and also to inquire if anyone else is having video issues. We are not having video issues in the courtroom. All right. Well, we can proceed if you just keep me abreast of the time. How much time is remaining for the appellant? Three minutes, 36 seconds. All right. Well, Ms. Quick, I know you're very experienced and I'll count on you to give you an honor system on the use of your time that when you get to a point that you think you need to reserve, please pause. Before you moved on, and so I didn't have to interrupt you, I wanted to ask about what's actually before us. It sounds to me like it's mostly about the fact that he was smoking and that it was burning marijuana that the officer smelled. At trial, it was even if the marijuana was burning, there's no way on earth that the officers could have possibly smelled it, which is why there was all that thing about the wind, et cetera, et cetera. Is that before us or do you concede that if your client, if we conclude that the finding that he was smoking at the time was not clearly erroneous, do you lose? No, Your Honor. I think it's just a question of alternative arguments. Our main argument is he wasn't smoking. There's these old buds. He could not have smelled that. Then there is the expert testimony that said even if he was smoking, the officers would not have been able to smell that. It's not our main position, but it's just an alternative argument. Okay. Thanks for the clarification. The district court didn't give much credence to the expert because all of his studies were based on unburnt marijuana, right? Correct, Your Honor. I think that is a way to distinguish what happened here and what Dr. Doty's research was on, but it's still relevant. Overall, his science and what he researches is about smell and able to detect smells. This court, the district court, committed clear error in discrediting this science peer expert in favor of Deputy Frye, who essentially provided anecdotal testimony of, in my personal and professional life, I've smelled marijuana before. I want to quickly, before I go to rebuttal, note an aspect of error in the district court's reasoning that illustrates clear error and is almost burden shifting. Right out of the gate, the district court's order states, the defense didn't give a reason to why these officers would lie. Why would they fabricate this? There's a reason that courts don't allow prosecutors to make those kinds of arguments at trial because it's not a binary question. It's not for this court either. Either you adopt the officer's statement that they smelled marijuana, or you're calling them unethical, dirty liars. It's not that simple. These officers simply could have been mistaken, and that's what our position is here. There are no further questions. I reserve the remainder of my time. We've lost Judge Smith. It appears we have lost Chief Judge Smith from the feed. Our IT department here in the courtroom is working on that. We just have to have him rejoin. That'll probably fix everything. Hopefully. Usually it does. Thank you. Good morning, everyone. I hope I've... Ms. Quick, when I was rudely dispatched from your presence, you were completing your initial opening argument, and I assume by now you have paused for your rebuttal. Is that correct? That's correct, Your Honor. Had you begun your argument for the government? All right. Unmute and proceed. Thank you, Your Honor. Your Honor, may it please the court, Kristen Herrera for the United States of America. This court should affirm the district court's denial of Mr. Shoemaker's motion to suppress the evidence gathered during the traffic stop. Officers may complete a warrantless stop of a vehicle when they have reasonable suspicion that the occupants are engaged in criminal activity. And the odor of burnt marijuana emanating from a vehicle, whether faint or strong, does constitute reasonable suspicion necessary to stop that vehicle. The district court here credited the testimony of the three police officers who testified, as well as the government's expert, Mr. David Fry, and concluded that the officers had reasonable suspicion to stop Mr. Shoemaker's car based on the smell of marijuana. Mr. Shoemaker challenges that conclusion on two grounds, which the government will address here. First, the district court's credibility findings were not clearly erroneous. The Jones case stated that district court's credibility findings are well nigh unreviewable, and the Wright decision said that district court's credibility findings are almost never clear error unless extrinsic evidence contradicts the witness's story or that story is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit it. And we don't have that. What about the implausibility aspect of this where you're talking about officers in a vehicle trailing another vehicle with a smell keen enough to detect the odor of long since burnt marijuana inside a vehicle some distance away? It just seems to the... It just doesn't seem anyway to a person... a common person that's nearly superhuman as opposed to something that would be expected of normal officers. And when the record includes expert testimony pointing out the lack of possibility or the minor possibility that smell could be that strong couldn't there be couldn't this be the kind of case where there could be a determination of clear error? The government does not believe that is this case for several reasons that you brought up I'd like to address. The first one is the expert. The expert, the defense's expert Dr. Doty his experience was not based on burnt marijuana which is what we have here. His experience saying that an officer could not smell that was solely based on raw marijuana. He admitted in his testimony and the district court's order notes that all of his experience is with raw marijuana. Contrast that with the government's expert Mr. Frye whose experience was primarily in burnt marijuana and he testified that it was possible and in fact he had encountered this frequently in his training and experience that you could smell burnt marijuana coming from the vehicle under the conditions that we have here in this traffic stop. And just to further that point all three of the officers testified at the hearing that they could smell burnt marijuana coming from vehicles on a daily basis when they were on their patrol. They said it's an extremely common experience that they all encounter on patrol as patrol officers. All three testified about that. That they're familiar with it they frequently encounter it driving behind vehicles when they're on patrol. Did they testify about burnt marijuana or burning marijuana? Your Honor, I believe their testimony was marijuana in general that they smell, they're familiar with the smell of marijuana and that they encounter the odor of marijuana on a daily basis and that they smell it while they're traveling in their vehicle and it's almost a daily occurrence is how their testimony was They don't distinguish between burnt and burning? No, I don't recall if they distinguished between burnt and burning marijuana whether it was actively burning or recently burnt. I don't know that they made that distinction, Your Honor. Was there any evidence Oh, go ahead, Chief. No, you stay on your point I was going to hit a little different point. Go ahead. Was there any evidence about when the marijuana might have been put out? And the reason why I ask that is were there recently burnt embers, ashes in the ashtray? Was there anything to indicate that the defendant might have put it out 30 seconds beforehand or whether it was three days beforehand? I'm just trying to figure that out. There wasn't any testimony about when exactly it had been put out. However, there was testimony and it's also noted in the video clip on the Government Exhibit 3 about the let's see the 3 minute and 56 second mark to the 4 minute mark that one of the roaches was fresh and still contained marijuana. So it looked like it had been put out mid-smoking of it because it still had some of the marijuana in it. And that was noted in the District Court's order and also Officer Minahan's testimony at page 69 of the transcript where they talked about that. Our expert, Mr. Fry, he also noted that lack of embers wouldn't be surprising because oftentimes if people are smoking marijuana in a vehicle and they see a police car, they're going to immediately put that out. So he was not surprised and said it was consistent with his training and expert experience that there would  embers in that ashtray. Chief Judge Smith, did you have a question? Yes. As I recall there was evidence in the record of wind direction and weather conditions. What was the relevance of that information and what were the reasonable inferences to be made from it? Your Honor, as noted in the District Court's order and that was at the addendum page 23 that wind evidence was inconclusive at best and if anything it undercuts the defendant's officer's testimony that they reasonably believed that the marijuana smoke was coming or smell was coming from the red Impala because the wind would have been blowing in that direction. There was testimony from the officers that the wind was swirling that day, that it was going north to south but then the wind evidence from the Des Moines Airport, which is some distance away from the traffic stop said the wind was blowing I believe it was either east to west or west to east. So the District Court found that that was inconclusive at best and if anything undercut the defendant's argument and supported the officer's testimony. The officers did take reasonable steps here to determine which car was the source of the smell of marijuana. They were first following the black sedan and the black truck that you see in the video and did not smell the marijuana smell at that time. They noted that the black sedan's windows were up. They see the red car that Mr. Shoemaker was in turn and they begin to follow that and that's when they start to smell the marijuana. So they didn't smell it when they were following the black truck. They didn't smell it when they were following the black sedan. They smell it when they're following the red Impala with its windows down. And then they continued following that for about 30 seconds. The red car noted that the smell remained constant and therefore they believed that was the source of the marijuana. Mr. Shoemaker brings up an SUV as well that could possibly be the source but they don't even see that car until that car doesn't even come into view until they've been following Mr. Shoemaker's car for 20 seconds approximately. So they reasonably did not believe that that was the source of the marijuana smell and reasonably believed that it was coming from Mr. Shoemaker's vehicle. They testified at the hearing that they do have steps that they take as part of their policies and procedures that how to determine where the marijuana smell is coming from when they are following a vehicle and that they followed those practices and policies here and took all of those steps and that's how they came to the conclusion that Mr. Shoemaker's car was the source and that conclusion and their testimony is corroborated by both evidence found within the car as well as Mr. Shoemaker's own statements. When at one point and this is at the addendum page 6 and also government exhibit 3 at the 1 minute and 55 mark one of the officers says I can still smell it, it being the weed and Mr. Shoemaker responds yeah. So clearly their testimony is corroborated even by Mr. Shoemaker's own statements that the car smelled like weed. I see my time is up. If there are no further questions, the government requests that the district court's opinion be affirmed. Thank you. Thank you Ms. Herrera. Ms. Quick your rebuttal. I first want to address their actual testimony on burnt versus burning because it illustrates how weak this testimony was even without the contradictory evidence. Officer Steinkamp on page 43 noted that they failed to mention in the report whether it was burning or raw marijuana and he says quote, but based on my training experience, I know burnt marijuana has a more distinct odor. It dissipates through the air more and is basically more encompassing of the area. Officer Minihan on page 65 said quote, he believed based upon all the evidence from the stop that it was burning marijuana. Now Officer Minihan's statement just shows he wasn't making an assessment based off of what he claimed to have perceived at the time while they were driving. His assessment comes from what they learned after the fact. So in conclusion, this isn't like the cases that are cited by the government, even the Castaneda case where we have an officer who states, I smelled marijuana and the only evidence to rebut it is some cross-examination questioning whether that's reliable. Courts, even in those circumstances, question the strength of that evidence. Here, it's contradicted both by the extrinsic evidence at the scene, by expert testimony, and other district courts have rejected that in the past. So for those reasons, it was clear error and it must be reversed. Thank you Ms. Quick. Thank you also Ms. Herrera. Court appreciates both counsel's argument to the court and the briefing that you've submitted. We'll take the case under advisement.